UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:11-CV-627-BR

JOSEPH GILREATH,           )
                           )
        Plaintiff,         )
                           )
    v.                     )          ORDER
                           )
CUMBERLAND COUNTY BOARD OF )
EDUCATION,                 )
                           )
        Defendant.         )

     This matter is before the court on the 13 March 2014 motion for summary judgment filed by defendant Cumberland County Board of Education ("the Board"). (DE # 47.) Also before the court is the Board's 17 April 2014 motion to strike. (DE # 55.) The period to respond and reply to the motions has elapsed, and the matters are now ripe for disposition.

## I. BACKGROUND[1]

     Plaintiff Joseph Gilreath ("plaintiff") began his employment with the Board in 1993 as a band director and music teacher at Anne Chesnutt Middle School in Fayetteville, North Carolina. (T. Hatch Aff., DE # 47-2, ¶ 2; Pl.'s Aff., DE # 53-21, ¶ 2.) Plaintiff's responsibilities in that position included, but were not limited to, teaching assigned band and music classes, maintaining a safe and orderly environment, maintaining order and discipline in the classroom, planning and implementing instruction, performing various non-instructional duties, reporting grades and other information to the school's principal, reporting student progress and other concerns regularly to parents, planning and executing band concerts, and supervising students at various

---

[1] Throughout this opinion, the court presents the facts, supported by the record, in the light most favorable to plaintiff, the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

band-related events.  (Pl.'s Aff., DE # 53-21, ¶ 3.)

Plaintiff suffers from Attention Deficit Hyperactivity Disorder-Inattentive ("ADHD"). (Pl.'s Mem. Opp'n Mot. Summ. J., Exs. 1-2, DE ## 53-1, 53-2; Pl.'s Aff., DE # 53-21, ¶ 4.)  This condition affects his short-term memory, as well as his ability to manage multiple tasks and activities at the same time.  (Id.)  Plaintiff also suffers from hypertension and was advised by doctors to avoid unnecessary stress.  (Pl.'s Mem. Opp'n Mot. Summ. J., Ex. 3, DE # 53-3, at 3; Pl.'s Aff., DE # 53-21, ¶ 4.)[2]

In September 2008, Thomas Hatch ("Hatch"), the principal of Anne Chesnutt Middle School, met with plaintiff.  (T. Hatch Aff., DE # 47-2, ¶ 9.)  At that meeting, plaintiff told Hatch that he had been dealing with some medical issues, and he provided Hatch with a letter from a psychotherapist dated 17 December 2002 that mentioned that he had been diagnosed with ADHD.  (Id. & Ex. 5; see also Pl.'s Aff., DE # 53-21, ¶ 5 ("In the fall of 2008, I requested various accommodations under the Americans with Disabilities Act . . . .").)  Hatch told plaintiff that he would need more recent documentation regarding plaintiff's medical issues in order to assist plaintiff.  (T. Hatch Aff., DE # 47-2, ¶ 10.)  In a memo to plaintiff dated 10 October 2008, Hatch stated that plaintiff was required to submit a doctor's note indicating job limitations that would prevent him from fulfilling non-instructional duties and communicating within the educational environment.  (Id. & Ex. 4; see also Pl.'s Mem. Opp'n Mot. Summ. J., Ex. 4, DE # 53-4.)  On 30 January 2009, Hatch reiterated to plaintiff that he should provide medical documentation if there were conditions that affected his ability to perform his duties.  (T. Hatch Aff., DE # 47-2, ¶¶ 12-14.)

_____

[2] Page citations are to the numbers generated by CM/ECF.

2

On 3 February 2009, plaintiff provided Hatch with documentation from his physician, Dr. Robert Ferguson, and he also requested various accommodations under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.* (Id. ¶¶ 15-16 & Exs. 7-8; Pl.'s Mem. Opp'n Mot. Summ. J., Ex. 3, DE # 53-3.) For example, plaintiff requested that he be allowed to conduct non-emergency communications with parents and guardians in writing or by email instead of by telephone or personal contact. (Id.) Among other things, he also requested limited evening duties with notice as far in advance as possible whenever such duties were assigned. (Id.) Plaintiff maintains that the requested accommodations were not granted in a timely manner. (Pl.'s Aff., DE # 53-21, ¶ 10.)

On 4 February 2009, plaintiff was placed on a corrective action plan, allegedly in light of concerns about his teaching performance. (T. Hatch Aff., DE # 47-2, ¶ 18 & Ex. 11; Pl.'s Mem. Opp'n Mot. Summ. J., Ex. 9, DE # 53-8.) In March 2010, he was placed on a similar action plan by Assistant Principal Michael Bain ("Bain") after having been given a negative performance evaluation that was dated 26 February 2010. (T. Hatch Aff., DE # 47-2, ¶¶ 20, 24 & Exs. 13-14; Pl.'s Mem. Opp'n Mot. Summ. J., Exs. 10, 17, DE ## 53-9, 53-16.) On 10 June 2010, plaintiff received a performance evaluation and was given two ratings of "Below Standard." (Def.'s Mot. Summ. J., Ex. 7c, DE # 47-10; Pl.'s Mem. Opp'n Mot. Summ. J., Ex. 21, DE # 53-20.) In August 2010, he was asked to start reporting to work early by Bain and the school's new principal, Tonjai Robertson. (Def.'s Mot. Summ. J., Ex. 7a, DE # 47-8; Pl.'s Mem. Opp'n Mot. Summ. J., Ex. 20, DE # 53-19, at 13.) On 9 September 2010, plaintiff received a letter from Bain stating in part that "there [were] still serious deficiencies to be addressed" with regard to plaintiff's performance. (Def.'s Mot. Summ. J., Ex. 7b, DE # 47-9.)

3

Plaintiff filed separate charges with the Equal Employment Opportunity Commission ("EEOC") on 14 April 2010 and 4 October 2010.[3] (Def.'s Mot. Summ. J., Exs. 8, 10, DE ## 47-11, 47-13; Pl.'s Mem. Opp'n Mot. Summ. J., Ex. 21, DE # 53-20.) Plaintiff commenced this action in North Carolina state court on 30 September 2011. (DE # 1-1.) On 3 November 2011, the Board removed plaintiff's lawsuit to this district. (DE # 1.) Plaintiff subsequently filed an amended complaint on 26 April 2012. (DE # 17.) Plaintiff raises two claims in the amended complaint. He contends that his requested accommodations were not granted in a timely manner in order to allow him to continue in effective employment as an educator, and, as such, his rights under the ADA were violated. (Id.) He also asserts that the Board retaliated against him in violation of the ADA. (Id.)

On 13 March 2014, the Board filed a motion for summary judgment. (DE # 47.) Plaintiff responded to the motion on 3 April 2014 (DE # 51), and the Board filed a reply on 17 April 2014 (DE # 54). Also on 17 April 2014, the Board filed a motion to strike. (DE # 55.) Plaintiff responded to the motion on 8 May 2014 (DE # 59), and the Board submitted a reply on 22 May 2014 (DE # 60).

## II. DISCUSSION

A.    Motion to Strike

As mentioned above, the Board filed a motion to strike on 17 April 2014. (DE # 55.) In part, the Board has moved to strike "a purported excerpt of an audio recording" (Def.'s Mot. Strike, DE # 55, at 1) that was submitted by plaintiff as Exhibit 5 to his response to the Board's

---

[3] At this juncture, the court notes that plaintiff alleges that he also suffers from Asperger's Disorder. (Am. Compl., DE # 17, at 3 ¶ 5; Pl.'s Mem. Opp'n Mot. Summ. J., Ex. 1, DE # 53-1.) However, he was not diagnosed with this condition until December 2010, i.e., after he had filed his second charge with the EEOC. (Pl.'s Mem. Opp'n Mot. Summ. J., Ex. 1, DE # 53-1.)

4

motion for summary judgment. (See DE # 53.) The audio file purportedly contains a recording of a meeting that occurred between plaintiff and Superintendent Franklin L. Till, Jr. on 15 September 2010, wherein plaintiff allegedly made a request for disability accommodations. (See Def.'s Mem. Supp. Mot. Strike, DE # 56, at 3; Pl.'s Aff., DE # 59-1, ¶¶ 2-3.) The Board contends that plaintiff did not disclose the audio recording during discovery even though the Board had requested copies of any recordings related to plaintiff's allegations as a part of its written discovery requests. (See Def.'s Mem. Supp. Mot. Strike, DE # 56, at 5.) As a result, the Board argues that plaintiff may not rely on the recording in opposing the motion for summary judgment and that the recording should be stricken from the record.

Rule 37 of the Federal Rules of Civil Procedure states: "If a party fails to provide information or identify a witness as required . . . , the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The court has "broad discretion" in determining whether a nondisclosure of evidence is substantially justified or harmless. United States v. $134,750 U.S. Currency, 535 F. App'x 232, 238 (4th Cir. 2013) (unpublished) (citation and internal quotation marks omitted). A trial court determines whether a party's failure to disclose evidence is substantially justified or harmless by considering

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

S. States Rack & Fixture, Inc. v. Sherwin-Williams Co., 318 F.3d 592, 597 (4th Cir. 2003). The burden rests on the party facing sanctions to show that his nondisclosure was harmless or substantially justified. Id. at 596.

5

Here, the Board has established that it was surprised by this evidence. The court also finds that plaintiff's failure to disclose the audio recording is not harmless because the audio recording is relevant to his failure to accommodate claim under the ADA. Furthermore, plaintiff has not shown that his failure to disclose the audio recording was substantially justified. As plaintiff has indicated, the audio recording has remained in his possession since its creation. (Pl.'s Aff., DE # 59-1, ¶ 4.) However, plaintiff has failed to demonstrate his diligence in searching for the recording, and he offers no specific explanation for his failure to produce it. Although he states that he made a "good faith effort" to comply with the Board's discovery requests and that he provided "several hundred documents" to the Board as part of that good faith attempt, the court concludes that these assertions are insufficient to demonstrate that the failure to produce was substantially justified.[4] (Pl.'s Mem. Opp'n Mot. Strike, DE # 59, at 5.) As a result, the audio recording will be stricken from the record. See Fed. R. Civ. P. 12(f) (providing that the court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter").

The Board has also moved to strike any reference that is made in plaintiff's summary judgement response and the accompanying exhibits to plaintiff's "suspension, termination, or any other event not alleged in the complaint, amended complaint, or in the EEOC charge upon which the action is based." (Def.'s Mot. Strike, DE # 55, at 1.) In his summary judgment

---

[4] The court notes that although plaintiff is currently represented by counsel, he was proceeding *pro se* at the time that he responded to the Board's discovery requests. (See Pl.'s Mem. Opp'n Mot. Strike, DE # 59, at 2.) However, plaintiff's *pro se* status, in and of itself, is not enough to support a finding that the failure to produce the audio recording was substantially justified. Moreover, as the Board has pointed out, "plaintiff offers no explanation for why the purported audio recording was not provided in a supplemental discovery response after plaintiff's current counsel began his representation while the discovery period was still open." (Def.'s Reply Supp. Mot. Summ. J., DE # 60, at 2.)

response and the exhibits thereto, plaintiff has referred to various acts that occurred after he filed this lawsuit. For example, he asserts that the Board suspended his employment in July 2012 and then terminated him in November 2012.[5] (See Pl.'s Mem. Opp'n Mot. Summ. J., DE # 51, at 1, 7, 13, 19.) These events fall well outside of the resolution of the relevant EEOC charge, which occurred on 30 June 2011. (Def.'s Mot. Summ. J., Ex. 11, DE # 47-14.) Moreover, none of the acts at issue in the motion to strike are referred to in the amended complaint, which was filed on 26 April 2012. (DE # 17.) The Board argues that plaintiff cannot now amend his complaint through the use of motion briefing, and that, as a result, the court may not consider the events in question in ruling on the pending motion for summary judgment. See Hexion Specialty Chems., Inc. v. Oak-Bark Corp., No. 7:09-CV-105-D, 2011 WL 4527382, at *7 (E.D.N.C. Sept. 28, 2011) ("[A] party may not use its briefs in support of or opposition to summary judgment to amend a complaint." (collecting cases)).

Although plaintiff agrees that he "cannot amend his complaint via summary judgment briefing" (Pl.'s Mem. Opp'n Mot. Strike, DE # 59, at 6), he nevertheless contends that all of the acts in question should be considered based on the "continuing violation" theory, which "allows for consideration of incidents that occurred outside the time bar when those incidents are part of a single, ongoing pattern of discrimination . . . ." Holland v. Wash. Homes, Inc., 487 F.3d 208, 219 (4th Cir. 2007) (citing Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 118 (2002)). Such a theory only applies, however, when an employee asserts a hostile work environment

---

[5] These examples are set forth for illustrative purposes. Plaintiff's memorandum includes other references to alleged discriminatory acts that occurred after the filing of this lawsuit. (See Def.'s Mot. Strike, DE # 55, at 3 (listing the offending portions of plaintiff's memorandum); Def.'s Mem. Supp. Mot. Strike, DE # 56, at 7 (same).) Furthermore, at Docket Entry No. 55-1, the Board has set forth a comprehensive list of all of the facts that it wants stricken from the exhibits attached to plaintiff's response to the motion for summary judgment.

claim. See id. at 219-20; Szedlock v. Tenet, 61 F. App'x 88, 93 (4th Cir. 2003) (per curiam) (unpublished) ("The Supreme Court's ruling in [Morgan] . . . makes clear that unless the plaintiff alleges a hostile work environment [claim] . . . , each instance of discrimination is a discrete act.").

Plaintiff cites no authority discussing the continuing violation theory in the context of a failure to accommodate under the ADA. Courts that have analyzed the doctrine in connection with failure to accommodate claims have concluded that the doctrine does not apply. See Teague v. Nw. Mem'l Hosp., 492 F. App'x 680, 684 (7th Cir. 2012); Tobin v. Liberty Mut. Ins. Co., 553 F.3d 121, 130-31 (1st Cir. 2009); Mayers v. Laborers' Health & Safety Fund of N. Am., 478 F.3d 364, 368 (D.C. Cir. 2007); Marshall v. Donahoe, Civil Action No. DKC 12-0431, 2013 WL 597596, at *4 (D. Md. Feb. 15, 2013). Furthermore, the continuing violation doctrine is not applicable to claims of retaliation because such claims are based on discrete acts. Morgan, 536 U.S. at 110-14; see also Huggins v. N.C. Dep't of Admin., No. 5:10-CV-414-FL, 2013 WL 5201033, at *23-24 (E.D.N.C. Sept. 13, 2013), aff'd, 554 F. App'x 219 (4th Cir. 2014) (per curiam) (unpublished). As a result, the continuing violation doctrine does not apply to this case.

Additionally, although the court recognizes that discriminatory acts that were committed "prior" to the filing of an EEOC charge may be used "as background evidence in support of a timely claim[,]" Morgan, 536 U.S. at 113, all of the acts that are at issue in the motion to strike occurred after the filing and resolution of the second EEOC charge. The court also agrees with the Board that plaintiff has not merely presented these subsequent events as "background evidence." Rather, he is affirmatively trying to use the events as substantive evidence in support of his claims. For example, with respect to his ADA retaliation claim, plaintiff emphasizes that

8

the termination of his employment in 2012 is "very clearly an adverse employment action . . . ." (Pl.'s Mem. Opp'n Mot. Summ. J., DE # 51, at 14.) However, the court may not consider plaintiff's termination or the other acts at issue in the motion to strike in ruling on his ADA retaliation claim because they are unrelated to the scope of the allegations contained in his second EEOC charge, whose allegations are discussed further below. See Chacko v. Patuxent Inst., 429 F.3d 505, 506 (4th Cir. 2005) (a claim reasonably related to the EEOC charge is allowed so long as it does not "reference different time frames, actors, and discriminatory conduct"); Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir. 1996) ("Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent . . . lawsuit.").

Based on the foregoing, the court finds that plaintiff has improperly asserted new allegations in his memorandum in opposition to the motion for summary judgment and the exhibits thereto. However, the court will not strike the newly asserted allegations as a group. It is unnecessary and would be a waste of time for the court to strike each and every one of the facts to which the Board objects. Instead, the court will simply not consider these facts in ruling on the Board's motion for summary judgment. Thus, the motion to strike will be denied with regard to this issue.

B.  Motion for Summary Judgment

    1. Standard of review

Summary judgment is proper only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

9

56(a). Summary judgment should be granted only in those cases "in which it is perfectly clear that no genuine issue of material fact remains unresolved and inquiry into the facts is unnecessary to clarify the application of the law." Haavistola v. Cmty. Fire Co. of Rising Sun, Inc., 6 F.3d 211, 214 (4th Cir. 1993). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In considering a motion for summary judgment, the court is required to draw all reasonable inferences in favor of the non-moving party and to view the facts in the light most favorable to the non-moving party. Anderson, 477 U.S. at 255. The moving party has the burden to show an absence of evidence to support the non-moving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The party opposing summary judgment must then demonstrate that a triable issue of fact exists; he may not rest upon mere allegations or denials. Anderson, 477 U.S. at 248. A mere scintilla of evidence supporting the case is insufficient. Id. at 252. "[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." Teamsters Joint Council No. 83 v. Centra, Inc., 947 F.2d 115, 119 (4th Cir. 1991).

2. Failure to accommodate claim

The Board first argues that plaintiff's failure to accommodate claim is time-barred. An individual claiming a violation of the ADA must file a charge with the EEOC within 180 days after the alleged unlawful employment practice occurred. See J.S. ex rel. Duck v. Isle of Wight Cnty. Sch. Bd., 402 F.3d 468, 475 n.12 (4th Cir. 2005) (citing 42 U.S.C. §§ 2000e-5(e)(1),

56(a). Summary judgment should be granted only in those cases "in which it is perfectly clear that no genuine issue of material fact remains unresolved and inquiry into the facts is unnecessary to clarify the application of the law." Haavistola v. Cmty. Fire Co. of Rising Sun, Inc., 6 F.3d 211, 214 (4th Cir. 1993). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In considering a motion for summary judgment, the court is required to draw all reasonable inferences in favor of the non-moving party and to view the facts in the light most favorable to the non-moving party. Anderson, 477 U.S. at 255. The moving party has the burden to show an absence of evidence to support the non-moving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The party opposing summary judgment must then demonstrate that a triable issue of fact exists; he may not rest upon mere allegations or denials. Anderson, 477 U.S. at 248. A mere scintilla of evidence supporting the case is insufficient. Id. at 252. "[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." Teamsters Joint Council No. 83 v. Centra, Inc., 947 F.2d 115, 119 (4th Cir. 1991).

2. Failure to accommodate claim

The Board first argues that plaintiff's failure to accommodate claim is time-barred. An individual claiming a violation of the ADA must file a charge with the EEOC within 180 days after the alleged unlawful employment practice occurred. See J.S. ex rel. Duck v. Isle of Wight Cnty. Sch. Bd., 402 F.3d 468, 475 n.12 (4th Cir. 2005) (citing 42 U.S.C. §§ 2000e-5(e)(1),

12117(a)). If the claimant fails to file a charge in a timely fashion with the EEOC, "the claim is time-barred in federal court." <u>McCullough v. Branch Banking & Trust Co.</u>, 35 F.3d 127, 131 (4th Cir. 1994).

In this case, the Board contends that plaintiff clearly asserted his failure to accommodate claim in the first charge that he filed with the EEOC on 14 April 2010. (Def.'s Mot. Summ. J., Ex. 8, DE # 47-11.) He received a right-to-sue letter with respect to that charge on 25 June 2010. (<u>Id.</u>, Ex. 9, DE # 47-12.) However, plaintiff did not file a lawsuit within 90 days of his receipt of the right-to-sue letter on the first EEOC charge. <u>See</u> 42 U.S.C. § 2000e-5(f)(1). Plaintiff filed his second EEOC charge on 4 October 2010. (<u>Id.</u>, Ex. 10, DE # 47-13.) He received a right-to-sue letter with respect to that charge on 30 June 2011. (<u>Id.</u>, Ex. 11, DE # 47-14.) Plaintiff's lawsuit, which was initially filed in North Carolina state court on 30 September 2011 (DE # 1-1), is based on his second EEOC charge.

In its memorandum in support of the motion for summary judgment, the Board initially argues that there is nothing in plaintiff's second EEOC charge which "remotely suggests that he is complaining about a failure to make reasonable accommodations" within the 180-day limitations period relating to that charge. (Def.'s Mem. Supp. Mot. Summ. J., DE # 48, at 13.) However, as plaintiff points out in his response to the motion, his second EEOC charge contains an initialed handwritten notation which states, "see attachment." (Pl.'s Mem. Opp'n Mot. Summ. J., DE # 51, at 9; <u>see also</u> Def.'s Mot. Summ. J., Ex. 10, DE # 47-13, at 2.) Plaintiff submitted the two-page attachment to his second EEOC charge as an exhibit to his memorandum in opposition to the motion for summary judgment. (Pl.'s Mem. Opp'n Mot. Summ. J., Ex. 21, DE # 53-20, at 3-4.) In that attachment to the second EEOC charge, plaintiff stated: "Michael

11

Bain and Principal Thomas Hatch had both previously been informed in writing that I had been diagnosed with ADHD and hypertension, both medical disabilities, and took no steps to accommodate my disabilities with regard to the evaluation process during the 2009-2010 school year." (Id. at 3.)

In its reply brief, the Board argues that even if the attachment to the second EEOC charge is considered,[6] plaintiff's failure to accommodate claim is still time-barred. The Board contends that the request for disability accommodations described by plaintiff in the second EEOC charge is a mere restatement of the original request for accommodations described in his first EEOC charge. (Def.'s Reply Supp. Mot. Summ. J., DE # 54, at 2.) Because plaintiff did not file a lawsuit within 90 days after the receipt of the right-to-sue letter on the first EEOC charge, the Board maintains that plaintiff cannot use the second charge to "revive [his] extinguished claim." (Id.)

The court finds the Board's argument to be unpersuasive. The first EEOC charge states that Hatch denied plaintiff's request for accommodations in February 2009, i.e., during the 2008-

---

[6] The court notes that the Board has not moved to strike the attachment to the second EEOC charge despite the fact that it states that the attachment was not produced during discovery and that it had not seen the document prior to receiving plaintiff's memorandum in response to the motion for summary judgment. (Def.'s Reply Supp. Mot. Summ. J., DE # 54, at 1 n.1.) Furthermore, although the Board complains that the attachment to the second EEOC charge contains a series of unexplained hand-written notations (id. at 2-3), the court finds that it is possible that plaintiff may be able to present the attachment or its contents at trial "in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). As the Fourth Circuit has noted:

> In Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986), the Supreme Court held that the nonmoving party could defeat summary judgment with materials capable of being reduced to admissible evidence at trial. . . . [T]he practical question presented by a motion for summary judgment is whether the case presents a genuine issue of fact for trial rather than whether the parties have put their evidence in final form.

U.S. Dep't of Hous. & Urban Dev. v. Cost Control Mktg. & Sales of Va., Inc., 64 F.3d 920, 926 n.8 (4th Cir. 1995) (emphasis added). Accordingly, it is appropriate for the court to consider the attachment in ruling on the motion for summary judgment.

12

2009 school year. (Def.'s Mot. Summ. J., Ex. 8, DE # 47-11, at 2.) In contrast, the attachment to the second EEOC charge states that Bain and Hatch "took no steps to accommodate [plaintiff's] disabilities with regard to the evaluation process during the 2009-2010 school year." (Pl.'s Mem. Opp'n Mot. Summ. J., Ex. 21, DE # 53-20, at 3 (emphasis added).) When viewed in the light most favorable to plaintiff, this language can be construed as alleging a failure to accommodate separate and apart from the first EEOC charge.[7] This is enough to create a genuine dispute of material fact as to whether plaintiff's failure to accommodate claim is time-barred. As a result, the Board's motion for summary judgment will be denied with regard to this issue.

The court now turns to the substance of plaintiff's failure to accommodate claim. In a failure to accommodate case under the ADA, a plaintiff establishes a prima facie case by showing (1) that he was an individual who had a disability within the meaning of the statute; (2) that the employer had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position; and (4) that the employer refused to make such accommodations. Crabill v. Charlotte Mecklenburg Bd. of Educ., 423 F. App'x 314, 322 (4th Cir. 2011) (unpublished) (citing Rhoads v. F.D.I.C., 257 F.3d 373, 387 n.11 (4th Cir. 2001)); Haneke v. Mid-Atl. Capital Mgmt., 131 F. App'x 399, 400 (4th Cir. 2005) (per curiam) (unpublished).

Here, the only argument made by the Board is that plaintiff cannot establish the fourth element of his ADA accommodation claim. "Implicit in the fourth element is the ADA

---

[7] The court also observes that the Fourth Circuit Court of Appeals has directed courts to "construe [EEOC charges] liberally" since they are not prepared by lawyers. Chacko v. Patuxent Inst., 429 F.3d 505, 509 (4th Cir. 2005); see also Sydnor v. Fairfax Cnty., Va., 681 F.3d 591, 594 (4th Cir. 2012) (stating that "untrained parties" should not be required "to provide a detailed essay to the EEOC in order to exhaust their administrative remedies").

13

requirement that the employer and employee engage in an interactive process to identify a reasonable accommodation." Haneke, 131 F. App'x at 400 (citing 29 C.F.R. § 1630.2(o)(3)). As the Fourth Circuit Court of Appeals has emphasized with respect to the ADA interactive process:

> [N]either party should be able to cause a breakdown in the process for the purpose of either avoiding or inflicting liability. Rather, courts should look for signs of failure to participate in good faith or failure by one of the parties to make reasonable efforts to help the other party determine what specific accommodations are necessary. A party that obstructs or delays the interactive process is not acting in good faith. A party that fails to communicate, by way of initiation or response, may also be acting in bad faith. In essence, courts should attempt to isolate the cause of the breakdown and then assign responsibility.

Crabill, 423 F. App'x at 323 (emphasis added) (citation omitted). Ultimately, "if a jury could conclude that [an employer] failed to engage in good faith in the interactive process, and that failure led to [the employer] not according reasonable accommodations to [the employee] in a timely manner, summary judgment cannot be granted." Pantazes v. Jackson, 366 F. Supp. 2d 57, 70 (D.D.C. 2005); see also Crutcher v. Mobile Hous. Bd., No. Civ. A. 04-0499-WS-M, 2005 WL 2675207, at *12 (S.D. Ala. Oct. 20, 2005) ("The law is clear that an employer's unreasonable delays in identifying and implementing reasonable accommodations can constitute a lack of good faith for purposes of the interactive process, and can serve as evidence of an ADA violation.").

In the interactive process, an employer may request and require that the employee provide sufficient medical documentation. See Phillips v. Donahoe, No. 1:11CV279, 2013 WL 646816, at *10 (M.D.N.C. Feb. 21, 2013) ("As part of [the interactive] process, Defendant was entitled to ask Plaintiff to provide medical documentation and information in order to determine the nature and extent of his restrictions and to attempt to determine what accommodations could

14

potentially be provided[.]"); Harvey v. America's Collectibles Network, Inc., No. 3:09-CV-523, 2011 WL 182864, at *8 (E.D. Tenn. Jan. 20, 2011) ("Defendant was within its rights under the ADA to require plaintiff to provide[] the necessary medical information to substantiate her claimed disability and need for an accommodation."). According to the EEOC, medical "[d]ocumentation is sufficient if it: (1) describes the nature, severity, and duration of the employee's impairment, the activity or activities that the impairment limits, and the extent to which the impairment limits the employee's ability to perform the activity or activities; and, (2) substantiates why the requested reasonable accommodation is needed." EEOC Enforcement Guidance on Disability-Related Inquiries and Medical Examinations of Employees under the Americans with Disabilities Act, Question No. 10 (July 27, 2000), available at http://www.eeoc.gov/policy/docs/guidance-inquiries.html (last visited July 30, 2014) ("EEOC Enforcement Guidance").

In this case, Hatch spoke with plaintiff about the issue of providing documentation to substantiate the nature and extent of his restrictions in September 2008, followed up that discussion in writing on 10 October 2008, and again reiterated the need for such supporting medical information on 30 January 2009. (T. Hatch Aff., DE # 47-2, ¶¶ 9-10, 12-14 & Ex. 4.) The court concurs with the Board that because the severity of plaintiff's impairment and need for reasonable accommodation were not obvious, Hatch's requests for medical information to corroborate plaintiff's request for a reasonable accommodation were appropriate.

On 3 February 2009, plaintiff provided Hatch with a medical history summary from his physician, Dr. Robert Ferguson ("Dr. Ferguson"). (T. Hatch Aff., DE # 47-2, ¶ 15 & Ex. 7; Pl.'s Mem. Opp'n Mot. Summ. J., Ex. 3, DE # 53-3.) The medical history summary was accompanied

15

by a letter from plaintiff requesting that he be provided with various accommodations. (T. Hatch Aff., DE # 47-2, ¶¶ 15-16 & Ex. 8; Pl.'s Mem. Opp'n Mot. Summ. J., Ex. 3, DE # 53-3.) In part, the requested accommodations included limited evening duties, limited supervision duties outside the classroom, flexible application of "general school-wide procedures," avoidance of disruptions to his routine, and fewer short notice requests. (Id.)

The Board argues that the medical history summary provided by Dr. Ferguson was insufficient to support plaintiff's request for disability accommodations because it failed to substantiate why such accommodations were needed. Dr. Ferguson did not address or explain plaintiff's need for any workplace accommodations. To the contrary, Dr. Ferguson noted that plaintiff's ADHD "for the most part is exceedingly well controlled" and that "[h]is symptoms are unlikely to worsen over the years if [plaintiff] is successful in his resolve to improve himself." (T. Hatch Aff., DE # 47-2, ¶ 15 & Ex. 7; Pl.'s Mem. Opp'n Mot. Summ. J., Ex. 3, DE # 53-3.) Dr. Ferguson also noted that plaintiff had undertaken a dietary and physical fitness program in an effort to reduce his job related stress, anxiety, and weight. (Id.)

The court agrees with the Board that the documentation provided by Dr. Ferguson was insufficient to support plaintiff's request for disability accommodations. However, the inquiry does not end there. The EEOC has stated that "if an employee provides insufficient documentation in response to the employer's initial request, the employer should explain why the documentation is insufficient and allow the employee an opportunity to provide the missing information in a timely manner." EEOC Enforcement Guidance, Question No. 11.

In this case, there is no evidence which indicates that Hatch or any other school official told plaintiff that the documentation that he provided in support of his request for

16

accommodations was insufficient. In fact, it appears that no one from the school responded to plaintiff, either formally or informally, after he submitted his letter on 3 February 2009. (See Am. Compl., DE # 17, ¶ 13.) Furthermore, although the Board argues that the undisputed evidence shows that plaintiff's "requests were provided" (Def.'s Mem. Supp. Mot. Summ. J., DE # 48, at 20), the court disagrees with the Board's assessment of the evidence in this case. Although Hatch does state in his affidavit that the requested accommodations were provided, he does not indicate the date(s) on which they were granted. (T. Hatch Aff., DE # 47-2, ¶ 16.) In contrast, in his affidavit, plaintiff avers that the accommodations were not provided in a timely fashion. (Pl.'s Aff., DE # 53-21, ¶¶ 5, 8, 10.) Even more importantly, plaintiff points to a letter written by the Board's attorney which demonstrates that several of the requested accommodations may not have been provided until 28 September 2011 or later.[8] (Pl.'s Mem. Opp'n Mot. Summ. J., Ex. 8, DE # 53-7.)

As a result, when viewing the record in the light most favorable to plaintiff, the court cannot agree that the Board's characterization of the interactive process is correct as a matter of law. On the contrary, a jury could conclude that school officials were responsible for the breakdown in communication and that this prevented the Board from affording reasonable accommodations to plaintiff in a timely manner. Therefore, the Board's motion for summary judgment on plaintiff's failure to accommodate claim will be denied.

---

[8] The court also notes that in his interrogatories to the Board, plaintiff asked the Board to "list any and all accommodations that you made for Plaintiff due to his disability." (Pl.'s Mem. Opp'n Mot. Summ. J., Ex. 23, DE # 53-22, at 15.) In response, the Board stated: "Please see the letter dated September 28, 2011, from David Phillips [the Board's attorney] to Plaintiff's then-attorney Mary-Ann Leon regarding accommodations . . . ." (Id.) This answer provides further support for plaintiff's position that his requested accommodations were not granted in a timely fashion.

17

3. Retaliation claim

Plaintiff also asserts a retaliation claim under the ADA. "Title V of the ADA governs claims for retaliation." Shepard v. Irving, 77 F. App'x 615, 622 (4th Cir. 2003). Title V states in pertinent part:

> No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

42 U.S.C. § 12203(a).

Retaliation claims are evaluated pursuant to the burden-shifting test established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973). In order to establish a prima facie case of retaliation under the ADA, a plaintiff must allege (1) that he has engaged in conduct protected by the ADA; (2) that he suffered an adverse action subsequent to engaging in the protected conduct; and (3) that there was a causal link between the protected activity and the adverse action. Freilich v. Upper Chesapeake Health, Inc., 313 F.3d 205, 216 (4th Cir. 2002) (applying these elements in the Rule 12(b)(6) context); Rhoads, 257 F.3d at 392. The burden of establishing a prima facie case of retaliation is not onerous. Ross v. Commc'ns Satellite Corp., 759 F.2d 355, 365 (4th Cir. 1985). Once a plaintiff has established a prima facie case of retaliation, the employer may rebut this initial showing by articulating a nondiscriminatory reason for the adverse employment action. Rhoads, 257 F.3d at 392. If the employer articulates such a reason, the burden shifts back to the plaintiff to show that the explanation for the action was a pretext for intentional retaliation. Id. In its motion for summary judgment, the Board has only challenged the establishment of plaintiff's prima facie case of retaliation. Because the Board has not made any specific legal arguments with regard to the second and third steps of the

18

McDonnell Douglas framework, the court need not undertake an analysis of those issues.

Here, plaintiff engaged in a protected activity when he requested disability accommodations. Haulbrook v. Michelin N. Am., 252 F.3d 696, 706 (4th Cir. 2001); Stopka v. Med. Univ. of S.C., Civil Action No. 2:05-1728-CWH, 2007 WL 2022188, at *5 (D.S.C. July 11, 2007). It is also clear that he engaged in a protected activity when he filed charges with the EEOC on 14 April 2010 and 4 October 2010. See Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 656 (4th Cir. 1998).

The Board contends that plaintiff has not shown that he suffered an adverse action in the 180 days prior to the filing of his second EEOC charge on 4 October 2010. See 42 U.S.C. § 2000e-5(e)(1). The definition of "adverse action" in the retaliation context is broader than the adverse-action standard used in the context of a discrimination claim. See Thompson v. N. Am. Stainless, LP, 131 S. Ct. 863, 868 (2011); Alexander v. City of Greensboro, 762 F. Supp. 2d 764, 798 n.27 (M.D.N.C. 2011). With regard to retaliation claims, an action is materially adverse if a reasonable employee would have found it to be so, meaning that it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination.[9] Burlington N. &

---

[9] The Board has noted that plaintiff was not subjectively dissuaded from making or supporting a charge of discrimination because he continued to file charges of discrimination with the EEOC after this lawsuit was filed. (Def.'s Mem. Supp. Mot. Summ. J., DE # 48, at 24 n.4; Def.'s Reply Supp. Mot. Summ. J., DE # 54, at 3.) However, the standard for assessing retaliation claims is an objective, rather than a subjective, one. Burlington N., 548 U.S. at 68 ("We refer to reactions of a reasonable employee because we believe that the provision's standard for judging harm must be objective." (emphasis in original)); Baloch v. Kempthorne, 550 F.3d 1191, 1199 n.5 (D.C. Cir. 2008) (disagreeing with district court's reasoning that alleged retaliatory actions were not materially adverse where plaintiff continued to file administrative complaints even after the alleged actions occurred because it appeared that the district court "focused on [the plaintiff's] subjective reactions rather than on whether the objective 'reasonable worker' would have been dissuaded from making a discrimination complaint." (quoting Burlington N., 548 U.S. at 68)).

19

<u>Santa Fe Ry. Co. v. White</u>, 548 U.S. 53, 68 (2006).[10] Plaintiff's adverse action allegations must be considered in context, as an employment action in one context may be found to be materially adverse while in a different context it would not. <u>Id.</u> at 69.

Plaintiff maintains that he has identified a retaliatory adverse action within the relevant time period. On 10 June 2010, he received a negative performance evaluation.[11] (<u>See</u> Def.'s Mot. Summ. J., Ex. 7c, DE # 47-10; Pl.'s Mem. Opp'n Mot. Summ. J., DE # 51, at 18; <u>id.</u>, Ex. 21, DE # 53-20.) Pursuant to that evaluation, plaintiff was given two ratings of "Below Standard." (<u>Id.</u>) Plaintiff asserts that all evaluations that were conducted prior to October 2008 had rated his performance in all areas as "At Standard" or better. (Pl.'s Mem. Opp'n Mot. Summ. J., DE # 51, at 6; Pl.'s Aff., DE # 53-21, ¶ 19.) No administrator had given plaintiff any rating of "Below Standard," "Unsatisfactory," "Developing," or "Not Demonstrated" until after he had revealed his disabilities and requested accommodations for them. (<u>Id.</u>) Plaintiff further contends that "that any behaviors that Cumberland County Schools' personnel had identified as 'inappropriate' or other similar descriptions would have been consistent with the symptoms of the disabilities which [he] had revealed to Cumberland County Schools and/or requested accommodation, and such behaviors were not expressly prohibited by any specific policies, terms, or conditions of [his] employment." (Pl.'s Aff., DE # 53-21, ¶ 14.)

The Board argues that "a negative evaluation alone" is not an adverse employment

---

[10] Although <u>Burlington Northern</u> involved a Title VII retaliation claim, the ADA generally requires the same type of underlying harm to support retaliation claims as apply under Title VII. <u>See</u> <u>Valentine v. Potter</u>, No. 1:09CV880, 2013 WL 1320474, at *8 n.7 (M.D.N.C. Mar. 29, 2013) (citing <u>Rhoads</u>, 257 F.3d at 391-92).

[11] Also within the relevant time period, on 9 September 2010, plaintiff received a letter from Assistant Principal Bain stating in part that "there [were] still serious deficiencies to be addressed" with regard to plaintiff's performance. (Def.'s Mot. Summ. J., Ex. 7b, DE # 47-9.)

action. (Def.'s Mem. Supp. Mot. Summ. J., DE # 48, at 23.) However, in the retaliation context, "[s]ome courts have found that negative performance evaluations, standing alone, can be considered an adverse employment action."[12] Bowen-Hooks v. City of N.Y., — F. Supp. 2d —, No. 10-CV-5947 (MKB), 2014 WL 1330941, at *31 (E.D.N.Y. Mar. 31, 2014); see also Silverman v. Bd. of Educ. of City of Chi., 637 F.3d 729, 741 (7th Cir. 2011) (stating that "a negative performance evaluation could constitute an adverse action" for a retaliation claim); Siddiqi v. N.Y. City Health & Hospitals Corp., 572 F. Supp. 2d 353, 372 (S.D.N.Y. 2008) ("Unlike in discrimination claims, [for the purposes of a retaliation claim,] negative performance reviews, standing alone, can be considered an adverse employment action."); but cf. Brown v. Advocate S. Suburban Hosp., 700 F.3d 1101, 1109 (7th Cir. 2012) ("[I]t is not clear whether a negative performance review, standing alone, can ever constitute a materially adverse employment action in the retaliation context." (emphasis in original)).

Other courts have found that even though the definition of "adverse action" is broadened in the context of a retaliation claim, a plaintiff must show that a negative performance evaluation resulted in some other tangible negative consequences in order to constitute an adverse action. See, e.g., Blizzard v. Marion Technical Coll., 698 F.3d 275, 290 (6th Cir. 2012) ("Generally, a negative employment evaluation does not rise to th[e] level [of an adverse action] unless it 'significantly impact[s] an employee's wages or professional advancement.'" (last alteration in original) (citation omitted)), cert. denied, 133 S. Ct. 2359 (2013); Bhatti v. Trs. of Boston Univ.,

---

[12] The court observes that the EEOC has also indicated that a negative evaluation can constitute an adverse action in the retaliation context. See EEOC Compliance Manual, Section 8: Retaliation, at 8-II.D.1. (May 20, 1998), available at http://www.eeoc.gov/policy/docs/retal.html (last visited July 30, 2014) ("The most obvious types of retaliation are denial of promotion, refusal to hire, denial of job benefits, demotion, suspension, and discharge. Other types of adverse actions include threats, reprimands, negative evaluations, harassment, or other adverse treatment." (emphasis added)).

21

659 F.3d 64, 73 (1st Cir. 2011) (unwarranted negative evaluations must yield some "tangible consequences" in order to constitute an adverse action in the retaliation context); Cain v. Green, 261 F. App'x 215, 217 (11th Cir. 2008) (per curiam) (unpublished) ("'[A] lower score on [a] performance evaluation, by itself, is not actionable . . . unless [the employee] can establish that the lower score led to a more tangible form of adverse action, such as ineligibility for promotional opportunities.'" (some alterations in original) (quoting Brown v. Snow, 440 F.3d 1259, 1265 (11th Cir. 2006))); Altman v. McHugh, Civil Action No. 5:11cv00061, 2012 WL 1190271, at *17 (W.D. Va. Apr. 9, 2012) ("In the Fourth Circuit, a negative performance evaluation alone, without any accompanying injury or change in the terms or conditions of employment, is insufficient to constitute a materially adverse employment action in order to establish a cause of action for retaliation . . . ." (citing Parsons v. Wynne, 221 F. App'x 197 (4th Cir. 2007) (per curiam) (unpublished))), aff'd 478 F. App'x 762 (4th Cir. 2012) (per curiam) (unpublished); Ragin v. E. Ramapo Cent. Sch. Dist., No. 05-CV-6496(PGG), 2010 WL 1326779, at *17 (S.D.N.Y. Mar. 31, 2010) ("In the retaliation context, . . . a negative or critical evaluation will not constitute an adverse employment action unless the evaluation is accompanied by other adverse consequences."), aff'd, 417 F. App'x 81 (2d Cir. 2011) (unpublished).

The court need not resolve this issue for the purposes of this case. Even if the Board is correct that a negative evaluation, in and of itself, is not a materially adverse action, plaintiff further alleges that he was retaliated against because he was assigned additional duties during the 180-day limitations period. (Pl.'s Mem. Opp'n Mot. Summ. J., Ex. 20, DE # 53-19, at 13-14; Pl.'s Aff., DE # 53-21, ¶ 22.) He argues that these "arbitrary and ongoing extra duty assignments . . . were inconsistent with assignments given to other teachers at his assigned

school and/or inconsistent with assignments given to other band directors within Cumberland County schools . . . ." (Pl.'s Mem. Opp'n Mot. Summ. J., Ex. 20, DE # 53-19, at 13; see also Pl.'s Aff., DE # 53-21, ¶ 22.) For example, starting on or about 30 August 2010, he was "instruct[ed] . . . to report to work earlier than other faculty or staff . . . ." (Pl.'s Mem. Opp'n Mot. Summ. J., Ex. 20, DE # 53-19, at 13; see also id. at 14; Pl.'s Mem. Opp'n Mot. Summ. J., DE # 51, at 13; Def.'s Mot. Summ. J., Ex. 7a, DE # 47-8.) He maintains that was not compensated in relation to the additional duties. (Pl.'s Mem. Opp'n Mot. Summ. J., Ex. 20, DE # 53-19, at 14.) Thus, plaintiff has alleged that the 10 June 2010 negative evaluation led to tangible negative consequences that might have dissuaded a reasonable employee from complaining about discrimination. Adhering to the broader standard of Burlington Northern and keeping in mind that plaintiff's burden in establishing his prima facie case of retaliation is not onerous, the court finds that plaintiff has alleged enough to create a genuine dispute of material fact with regard to the issue of whether he suffered a materially adverse employment action.[13]

Finally, the Board contends that plaintiff has failed to show that a causal connection exists between his protected activity and the asserted adverse employment action. The United States Supreme Court recently clarified in the context of a Title VII case that "retaliation claims must be proved according to traditional principles of but-for causation," requiring "proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." Univ. of Tex. Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2533 (2013).

---

[13] Because the court has found that plaintiff's allegations regarding the assignment of additional duties are enough to create a genuine dispute of material fact with regard to the issue of whether he suffered a materially adverse employment action, the court has not considered plaintiff's argument that he also suffered an adverse action because he was prevented from transferring to another school during the relevant time period. (See Pl.'s Mem. Opp'n Mot. Summ. J., DE # 51, at 19.)

23

Before Nassar, the Fourth Circuit Court of Appeals adhered to the view that a close temporal proximity between the protected activity and the adverse action is sufficient to state a prima facie case of causation. See Price v. Thompson, 380 F.3d 209, 213 (4th Cir. 2004) ("[A] causal connection for purposes of demonstrating a prima facie case exists where the employer takes adverse employment action against an employee shortly after learning of the protected activity."); Dowe, 145 F.3d at 657 ("This Court has held that evidence that the alleged adverse action occurred shortly after the employer became aware of the protected activity is sufficient to 'satisf[y] the less onerous burden of making a prima facie case of causa[tion].'" (emphasis and alterations in original) (citation omitted)). Even after Nassar, courts have adhered to that rule. See, e.g., Feist v. La. Dep't of Justice, Office of the Atty. Gen., 730 F.3d 450, 454 (5th Cir. 2013); Lobato v. N.M. Env't Dep't, 733 F.3d 1283, 1293 (10th Cir. 2013); Ramirez v. Bausch & Lomb, Inc., 546 F. App'x 829, 832-33 & n.2 (11th Cir. 2013) (per curiam) (unpublished) (noting that "the [Supreme] Court did not clarify the role of 'but for' causation in a plaintiff's prima facie case"); Taylor v. Republic Servs., Inc., 968 F. Supp. 2d 768, 797-98 (E.D. Va. 2013).

Furthermore, where a plaintiff can establish a causal connection through other evidence tending to show causation, a delay between the protected activity and the adverse action is not fatal. See Atkins v. Holder, 529 F. App'x 318, 321 (4th Cir. 2013) (per curiam) (unpublished) (because plaintiff's termination was not temporally close to his protected activity, he was required to "show other relevant evidence to support causation"); Perry v. Kappos, 489 F. App'x 637, 643 (4th Cir. 2012) (unpublished) ("Where the time between the events is too great to establish causation based solely on temporal proximity, a plaintiff must present 'other relevant evidence . . . to establish causation,' such as 'continuing retaliatory conduct and animus' in the

24

intervening period." (omission in original) (quoting Lettieri v. Equant Inc., 478 F.3d 640, 650 (4th Cir. 2007))); Westmoreland v. Prince George's Cnty., Md., 876 F. Supp. 2d 594, 613 (D. Md. 2012) ("[A]s this Court has consistently held, 'plaintiffs may state a prima facie case of causation by relying on evidence other than, or in addition to, temporal proximity where such evidence is probative of causation.'" (quoting Jenkins v. Gaylord Entm't Co., 840 F. Supp. 2d 873, 881 (D. Md. 2012))).

The Board's argument with respect to the matter of causation assumes that plaintiff's initial request for accommodations in the fall of 2008 is the only protected activity at issue. (See Def.'s Mem. Supp. Mot. Summ. J., DE # 48, at 25.) To the contrary, as the court has previously discussed, plaintiff engaged in several protected activities in this case. For example, he engaged in a protected activity when he filed his first EEOC charge on 14 April 2010. See discussion, supra, at 19. Plaintiff received a negative performance evaluation approximately eight weeks later on 10 June 2010, which is close enough to imply retaliation for the purposes of plaintiff's prima facie case. Cf. King v. Rumsfeld, 328 F.3d 145, 151 & n.5 (4th Cir. 2003) (ten-week period between protected activity and adverse action sufficient to satisfy prima facie causation requirement even though the length of time was "sufficiently long so as to weaken significantly the inference of causation between the two events"); Hoyle v. Freightliner, LLC, 650 F.3d 321, 327-28, 337 (4th Cir. 2011) (reassignment and then termination about a month after protected activity sufficient to satisfy prima facie causation requirement).

Moreover, plaintiff has adduced other circumstantial evidence that is probative of continuing retaliatory conduct and a retaliatory animus on the part of the Board. For example, plaintiff engaged in a protected activity when he submitted his written request for

25

accommodations to Hatch on 3 February 2009. (T. Hatch Aff., DE # 47-2, ¶ 16 & Ex. 8; Pl.'s

Mem. Opp'n Mot. Summ. J., Ex. 3, DE # 53-3.) The very next day, Hatch placed plaintiff on a

corrective action plan pursuant to which his job performance would be monitored. (T. Hatch

Aff., DE # 47-2, ¶ 18 & Ex. 11; Pl.'s Mem. Opp'n Mot. Summ. J., Ex. 9, DE # 53-8.) Although

plaintiff had taught at Anne Chestnut Middle School since 1993, it appears that he was not

placed on an action plan prior to 4 February 2009. He was placed on a similar action plan in

March 2010 after having been given a negative performance evaluation that was dated 26

February 2010. (T. Hatch Aff., DE # 47-2, ¶¶ 20, 24 & Exs. 13-14; Pl.'s Mem. Opp'n Mot.

Summ. J., Exs. 10, 17, DE ## 53-9, 53-16.) Starting on or about 30 August 2010, he was asked

to report to work earlier than other faculty or staff.[14] (Pl.'s Mem. Opp'n Mot. Summ. J., Ex. 20,

DE # 53-19, at 13; Def.'s Mot. Summ. J., Ex. 7a, DE # 47-8.) On 9 September 2010, plaintiff

received a letter from Assistant Principal Bain stating in part that "there [were] still serious

deficiencies to be addressed" with regard to plaintiff's performance. (Def.'s Mot. Summ. J., Ex.

7b, DE # 47-9.) Plaintiff contends that "none of these actions would have ever occurred" "had

[he] never revealed [his] disabilities nor asked for accommodations[.]" (Pl.'s Aff., DE # 53-21, ¶

---

[14] The court notes that the 30 August 2010 event, which was considered in determining whether plaintiff
has suffered a materially adverse employment action, occurred approximately four and a half months after plaintiff
filed his first EEOC charge. This four-and-a-half-month proximity, in and of itself, would likely be insufficient to
satisfy the causation element of the prima facie case. See Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273
(2001) (suggesting that a "3-month period [is] insufficient"); Atkins, 529 F. App'x at 321 (holding that termination
that came four months after the filing of the EEOC complaint was "not temporally very close to [the] protected
activity"); Perry, 489 F. App'x at 643 ("a three-month lapse is too long to establish causation, without more");
Pascual v. Lowe's Home Ctrs., Inc., 193 F. App'x 229, 233 (4th Cir. 2006) (per curiam) (unpublished) (holding that
"three to four months" "is too long to establish a causal connection by temporal proximity alone"); but see Williams
v. Cerberonics, Inc., 871 F.2d 452, 454, 457 (4th Cir. 1989) (holding that proof that employer fired employee
approximately three and a half months after the employee filed a charge of discrimination sufficed to state a prima
facie case of causation). However, even if the temporal proximity of the 30 August 2010 event, in and of itself, fails
to create a triable issue on the question of causation, it is probative of the question of causation when considered in
conjunction with the other circumstantial evidence. See Westmoreland, 876 F. Supp. 2d at 613-14 (discussing the
concept of conditional probability, i.e., that treating each piece of evidence in isolation may lead to an erroneous
view of the whole).

26

21.) Based on this evidence, the court cannot rule as a matter of law that no genuine dispute of material fact exists on the issue of causation. Accordingly, the Board's motion for summary judgment on plaintiff's ADA retaliation claim will be denied.

### III. CONCLUSION

For the foregoing reasons, the Board's motion to strike (DE # 55) is GRANTED IN PART and DENIED IN PART. The court ORDERS that the audio recording submitted as Exhibit 5 to plaintiff's memorandum in opposition to the Board's motion for summary judgment is hereby stricken from the record, and the Clerk is DIRECTED to return it to plaintiff's counsel. The Board's motion for summary judgment (DE # 47) is DENIED.

This 31 July 2014.

W. Earl Britt
Senior U.S. District Judge